[Cite as *Armacost v. Armacost*, 2012-Ohio-415.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE   COUNTY

CHARLES N. ARMACOST          :
                             :          Appellate Case No. 2011-CA-7
        Plaintiff-Appellee   :
                             :          Trial Court Case No. 09-DIV-675
v.                           :
                             :
KAREN L. ARMACOST            :          (Civil Appeal from Common Pleas
                             :           Court, Domestic Relations)
        Defendant-Appellant  :
                             :

. . . . . . . . . .

O P I N I O N

. . . . . . . . . .

Rendered on the ____3rd____ day of ____February____, 2012.

. . . . . . . . . . .

JAMES S. DETLING, Atty. Reg. #0042728, 421 Public Square, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

LAWRENCE J. WHITE, Atty. Reg. #0062363, 2533 Far Hills Avenue, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Karen L. Armacost appeals from the trial court's judgment entry and decree of divorce terminating the parties' marriage, dividing their assets and debts, and ordering appellee Charles N. Armacost to pay spousal support.

{¶ 2}   In her sole assignment of error, Karen contends the trial court erred in dividing the

parties' marital property.[1] Specifically, she claims the trial court erred in (1) reducing her share of the marital assets by one-half of a second mortgage balance and (2) failing to identify the specific assets from which this reduction would be made.

{¶ 3} The record reflects that the parties married in 1985. They had one child, who is now emancipated. Charles moved out of the marital residence in September 2007. At that time, Karen did not work outside the home. She had a small, home-based business that was not profitable. Following Charles' departure, Karen liquidated her modest savings to pay her living expenses. She paid a first mortgage on the marital residence until April 2009, at which time she stopped paying and moved into a rental property. While the parties were separated, Charles paid a second mortgage, real estate taxes, and homeowners' insurance on the marital residence. He also paid for some repairs.

{¶ 4} In October 2009, Charles filed a complaint for divorce. Around that time, the marital residence was foreclosed upon. The foreclosure sale left a deficiency on the first and second mortgages. While the divorce action was pending, Karen filed for Chapter 7 bankruptcy. The filing discharged her obligation on a number of debts, including the first and second mortgages as well as her credit cards.

{¶ 5} The divorce action proceeded to a hearing before a magistrate on January 31, 2011. Following the hearing, the magistrate filed a February 23, 2011 decision. Therein, the magistrate adopted the final hearing date as the marriage termination date. With regard to the marital residence, the magistrate found that the bank holding the first mortgage had agreed not to seek a deficiency judgment. The magistrate also found, however, that Charles remained liable to the bank holding the second mortgage, which had a balance of $38,107. Although Karen's

---

[1] For purposes of clarity, we will refer to the parties by their first names.

bankruptcy had discharged her legal obligation to the bank on the second mortgage, the magistrate found it equitable for Karen to be responsible to Charles for one-half of the $38,107. As a result, the magistrate credited "one-half of the $38,107 against [Karen's] share of the marital assets." (Doc. #35 at 3).

{¶ 6} Concerning those assets, the magistrate awarded the parties their respective automobiles, which had minimal value, and divided their personal property, which was modest. The magistrate also awarded the parties their respective bank accounts, which contained little money (aside from separate funds Charles had inherited). The magistrate's decision reveals that the only marital assets of significance were Charles' IRA and his public-pension PERS account. The IRA had a balance of $26,607 on December 31, 2009. Although the magistrate did not mention the PERS balance, an account statement reflects that it had a balance of $74,056.45 on December 31, 2009. The magistrate found Karen entitled to one-half of the January 31, 2011 value of the IRA.[2] The magistrate also found Karen entitled to one-half of the PERS "benefits accumulated during the marriage." The magistrate directed the PERS benefits to be divided through a "division of property order." The magistrate additionally found that Karen had liquidated a Prudential account but that "there may still be some value in that account." If so, the trial court found Charles entitled to one-half of that value. Finally, the magistrate ordered Charles to pay spousal support.

{¶ 7} Karen filed objections to the magistrate's decision. She primarily challenged the magistrate's determination that she was responsible for one-half of the second mortgage balance. Karen stressed that she had discharged her legal obligation through bankruptcy. She also noted

---

[2] Apparently, no evidence was introduced at the hearing establishing the value of the IRA on January 31, 2011.

the absence of evidence that the second-mortgage holder intended to seek recovery from Charles. Finally, she asserted that Charles could file for bankruptcy himself, thereby avoiding the debt. Karen reasoned that it would be unfair for Charles to receive a disproportionate share of the marital assets to account for a debt that he might not have to pay.

{¶ 8} The trial court overruled Karen's objections and entered a final judgment and divorce decree. In relevant part, the trial court reasoned:

{¶ 9} "* * * [T]he Magistrate's decision did not require the Defendant to pay a debt which has been discharged in bankruptcy; the Magistrate equitably divided the existing marital property, taking into consideration the existing marital debt. The Court further finds that the division should be made based on the facts that exist at the time of the hearing, not speculation about what may or may not occur in the future." (Doc. #38 at 2).

{¶ 10} On appeal, Karen first contends the trial court erred in reducing her share of the marital assets by one-half of the second-mortgage balance. Karen argues that the trial court's ruling creates a "windfall" for Charles for two reasons: (1) he now can file for Chapter 7 bankruptcy and discharge his liability on the second mortgage while retaining a disproportionate share of the marital assets, and (2) the holder of the second mortgage may never seek to collect from Charles, again allowing him to keep a disproportionate share of the marital assets.

{¶ 11} Upon review, we find Karen's argument to be unpersuasive. As an initial matter, we note that she has filed a final hearing transcript as part of her appeal. This transcript was not provided to the trial court with her objections below. (See Doc. #38 at 1-2). As a result, we may not consider the transcript in our resolution of her appeal. *Daniel v. Daniel*, 2d Dist. Miami App. No. 2005CA9, 2006-Ohio-411, ¶ 12-13. Instead, we will accept the magistrate's factual findings,

which the trial court adopted. With that limitation in mind, we turn to the merits of Karen's appeal.

{¶ 12} Under R.C. 3105.171(B), marital property must be divided equitably between divorcing parties. A trial court has broad discretion when dividing marital property. We review the division for an abuse of discretion. *Seitz v. Seitz*, 2d Dist. Montgomery App. Nos. 22426, 23698, 2010-Ohio-3655, ¶ 13-14.

{¶ 13} In the present case, Karen's bankruptcy discharged her legal obligation to the second-mortgage holder. This left Charles solely responsible for repaying the $38,107 balance, which had been a joint, marital debt. In light of Karen's discharge of her legal obligation, the magistrate and the trial court found it equitable for Charles to receive a larger share of the marital property. We see no abuse of discretion. When "an inordinate amount of marital property is distributed to one party over another, that distribution may be offset by a greater allocation of debt or there may be some other reason why such a distribution is equitable." *Rinehart v. Rinehart*, 4th Dist. No. 98 CA 24, 1999 WL 1240851 (Dec. 1, 1999).

{¶ 14} We do not dispute that Charles could file bankruptcy in the future, thereby discharging his obligation to the second-mortgage holder, or that the second-mortgage holder could forego seeking the $38,107 from Charles. The trial court recognized these possibilities but concluded that the property division "should be made based on the facts that exist at the time of the hearing, not speculation about what may or may not occur in the future." Karen has not pointed to any evidence indicating that Charles intended to file bankruptcy at the time of the final hearing or that the second-mortgage holder had agreed to forego pursuing the balance due. As a result, the trial court did not abuse its discretion in finding Charles responsible for repaying the

$38,107 and awarding him extra marital property to offset the debt allocation.

{¶ 15} Karen also suggests that it was inequitable for the trial court to award Charles extra marital property given that he left her financially vulnerable when he vacated their home. We disagree. When establishing the marriage termination date, the magistrate took into account the fact that Charles had vacated the marital residence and left Karen to pay certain bills. The magistrate noted that, during the parties' separation but before the divorce complaint, Charles had continued to pay the second mortgage, property taxes, insurance, and other expenses while Karen had been forced to pay the first mortgage. Because Charles' act of vacating the marital residence had forced Karen to liquidate savings and incur some debt, the magistrate found it equitable to use the final hearing date, rather than the date Charles moved out of the residence, as the marriage termination date. The decision to use the latter date plainly benefitted Karen because it made her post-separation debts and expenses marital in nature, thereby negatively impacting Charles. We see no abuse of discretion in failing to "punish" Charles further by requiring him to be responsible for the entire second-mortgage balance without receiving a disproportionate share of the marital property.

{¶ 16} Finally, Karen contends the trial court erred in offsetting one-half of the second mortgage against her share of the marital assets without specifying which marital assets would be affected. In other words, she claims the trial court erred in failing to  identify the source of the roughly $19,000 in additional marital assets that Charles was awarded to account for his obligation on the second-mortgage.

{¶ 17} As set forth above, the only assets of any significance were Charles' IRA and his PERS account, both of which qualified as marital property. As of December 31, 2009, the IRA

had a balance of $26,607 and the PERS account had a balance of $74,056.45. Karen was awarded one-half of the IRA. With regard to the PERS account, she was granted "one half of the benefits accumulated during the marriage." (Doc.#35 at 3). The PERS benefits were ordered to be divided through a "division of property order." (*Id*.).

{¶ 18} The foregoing language fails to make clear how Charles is to receive roughly $19,000 in additional marital assets to account for his second-mortgage obligation. If the IRA balance and PERS benefits are divided equally, as the trial court ordered, virtually no other marital property will exist. The parties were awarded their respective automobiles and bank accounts, which had little value. The magistrate also noted that Karen "might" have some unknown remaining value in a liquidated Prudential account. The only other assets consisted of miscellaneous household items, which were ordered to be divided. Based on the record before us, and the language of the trial court's judgment entry, we cannot determine how Charles is to receive his extra share of the marital assets. Accordingly, we agree with Karen that a remand is necessary to resolve the issue.

{¶ 19} Based on the reasoning set forth above, Karen's assignment of error is sustained insofar as she contends the trial court erred in failing to identify the source of the roughly $19,000 in additional marital assets that Charles was awarded to account for his obligation on the second mortgage.

{¶ 20} The judgment of the Dark County Common Pleas Court is reversed, in part, and the cause is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH and FAIN, JJ., concur.

Copies mailed to:

James S. Detling
Lawrence J. White
Hon. Jonathan P. Hein